

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00395-CR
_____

ROBERT JEFFREY SPAETH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 1
Potter County, Texas
Trial Court No. 141,284; Honorable Richard Dambold, Presiding

October 18, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Pursuant to a plea bargain, Appellant, Robert Jeffrey Spaeth, was convicted of possession of marihuana, less than two ounces, a Class B misdemeanor,[1] and sentenced to six days confinement and a $300 fine. By a sole issue, he argues the

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (West 2017).

evidence should have been suppressed because he was unlawfully stopped for making a U-turn. We affirm.

BACKGROUND

Shortly after midnight on January 21, 2015, Appellant was traveling eastbound on East Amarillo Boulevard and turned his vehicle around to travel in the opposite direction where the boulevard intersects with North Johnson Street. He was stopped by Officer Justin Serbantez for making the U-turn in a "business district."

Pursuant to the stop, the officer conducted a warrantless search of Appellant's vehicle which resulted in the discovery and seizure of less than two ounces of marihuana. Appellant was arrested and charged with possession of marihuana. When his motion to suppress was denied, he entered into a plea bargain based on stipulated facts.

STANDARD OF REVIEW

The trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *Ramirez-Tamayo v. State*, No. PD-1300-16, 2017 Tex. Crim. App. LEXIS 881, at *9 (Tex. Crim. App. Sept. 20, 2017) (citing *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016)). First, we afford almost total deference to the trial court's determination of historical facts. *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016). When, as here, findings of fact are not entered, we view the evidence in the light most favorable to the trial court's ruling and assume it made findings that are consistent with its ruling and that are supported by the record. *Id.* Second, we review the trial court's application of the law to the facts *de novo. Id.* We will uphold the trial court's

ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case. *Id.*

APPLICABLE LAW—FOURTH AMENDMENT

The Fourth Amendment prohibits unreasonable searches and seizures by the Government and its protections extend to brief investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo*, 2017 Tex. Crim. App. LEXIS 881, at *10 (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)). When a police officer initiates an investigatory detention, the burden is on the State to show that the officer had reasonable suspicion that the person detained was violating the law. *Terry v. Ohio,* 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Delafuente v. State*, 414 S.W.3d 173, 176 (Tex. Crim. App. 2013). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon would be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 1997). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

APPLICABLE LAW—AMARILLO MUNICIPAL CODE

Here, Appellant was detained based on suspicion of having violated a city ordinance prohibiting U-turns in certain areas of the city. In that regard, four separate

3

ordinances of the Amarillo Municipal Code are relevant to this appeal.  They provide as follows:

**Section 16-3-130—Central business district.**

It shall be unlawful and an offense to make a left-hand turn upon emerging from or entering into an Alley or Driveway except on One-way Streets within the *Central Business District* being formed by the following Street lines:

> Beginning at a point on the west line of Van Buren Street at its intersection with the Right-of-way of the FW & D R.R.; thence in a southerly direction along the west line of Van Buren Street to the south line of 11th Avenue; thence in an easterly direction along the south line of 11th Avenue to the West Boundary of the P & SF R.R. Right-of-way; thence in a northerly direction along the west boundary line of the P & SF R.R. Co. Right-of-way to its intersection with the FW & D R.R. Right-of-way; thence in a westerly direction along the south boundary line of the FW & D R.R. Right-of-way to the point of beginning.

**Section 16-3-131—Exit and entrance of parking establishments in central business district; required signs.**

Each operator, owner or lessee of a parking lot, garage or other establishment where cars are parked or stored, within the *Central Business District* set out in the preceding section, shall place and maintain in conspicuous view at the entrance and exit appropriate Signs advising the public whether a left turn or a right turn, or both, is allowed on leaving or entering the parking establishment.

**Section 16-3-132—Turning around—Where and when permitted.**

(a) The Operator of a vehicle shall not turn such vehicle so as to proceed in the opposite direction upon any Street except at an intersection.

(b) The Operator of a vehicle shall not turn such vehicle so as to proceed in the opposite direction unless such movement can be made in safety and without interfering with other traffic.

**Section 16-3-133—Same—Prohibited in business district, at traffic signals.**

The operator of a vehicle shall not turn such vehicle so as to proceed in the opposite direction upon any Street in a *business District* or at an intersection controlled by traffic signals.

(Emphasis added).

ANALYSIS

By a sole issue, Appellant contests the traffic stop leading to the discovery of the marihuana was unlawful because the U-turn he made was legal. For the reasons that follow, we disagree.

At the hearing on Appellant's motion to suppress, the parties stipulated to the following facts in lieu of further proof or testimony:

1. [Appellant] was driving a motor vehicle at 12:45 a.m. on January 21, 2015.

2. [Appellant's] initial direction of travel was eastbound on E Amarillo Boulevard in Amarillo.

3. [Appellant] turned his vehicle around at the intersection of N Johnson and E Amarillo Boulevard.

4. Officer Justin Serbantez is a certified peace officer with the Amarillo Police Department.

5. Serbantez was on duty in uniform in a marked patrol car at the time of the stop.

6. Serbantez witnessed [Appellant] turn his vehicle around.

7. Serbantez stopped [Appellant] because he had turned around at the intersection on N Johnson Street and E Amarillo Boulevard.

8. [Appellant] turned around his vehicle at an intersection, it was done safely, and it did not interfere with other traffic.

9. [Appellant] did not turn around his vehicle at an intersection that was controlled by traffic signals.

With these stipulations in mind, the only issue before the trial court was whether Appellant made a U-turn in a "business district" in violation of section 16-3-133 of the Amarillo Municipal Code.

The trial court took judicial notice that, at the time of the stop, the four corners of the intersection consisted of the following:

a fast food restaurant on the northeast corner;

an auto parts store on the southwest corner;

a lot on the northwest corner; and

a lot on the southeast corner.

The intersection is zoned by the City of Amarillo as "light commercial." Although there are residences along North Johnson Street, no residences exist at the four corners of the intersection.

Appellant argues that section 16-3-133 of the Amarillo city ordinance is vague because the term "business district" is subject to two interpretations. First, he contends it is synonymous to "Central Business District" and U-turns are illegal only in the specific geographical area defined by section 16-3-130. The second interpretation, according to Appellant, is that "business district" is an unconstitutionally vague term referring to other undefined areas of Amarillo. These interpretations, he contends, create an ambiguity that makes enforceability a problem as well as a violation of the rule of lenity.[2] In

---

[2] The rule of lenity requires the adoption of a less harsh interpretation of a penal statute when the statute is subject to different interpretations. *Cuellar v. State*, 70 S.W.3d 815, 821 (Tex. Crim. App. 2002) (Cochran, J., concurring). The rule of lenity was codified in 2015. *See* TEX. GOV'T CODE ANN. § 311.035 (West Supp. 2016).

6

support of his argument, he invokes the Code Construction Act. TEX. GOV'T CODE ANN. § 311.021 (West 2013).[3]

Under the canons of statutory construction, courts are to construe a statute according to its plain meaning, unless the language is ambiguous or the interpretation would lead to absurd results that the drafters could not have intended. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). This is accomplished by focusing on the literal text of the statutory language in question, reading it in context, and construing it "according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). In applying the Code Construction Act, a court must assume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).

Appellant relies on *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), which involved an anti-noise ordinance, to support his argument that section 16-3-133 is ambiguous and vague. He suggests that unlike the ordinance in *Grayned,* section 16-3-133 fails to give an individual fair notice of the offending conduct proscribed by law, specifically as it pertains to the illegality of U-turns in certain parts of the City of Amarillo.

---

[3] Section 311.021 provides that in enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;
(2) the entire statute is intended to be effective;
(3) a just and reasonable result is intended;
(4) a result feasible of execution is intended; and
(5) public interest is favored over any private interest.

According to section 16-3-132, U-turns are permitted at intersections that are not controlled by traffic signals when they can be made safely and without interfering with other traffic. On the other hand, section 16-3-133 prohibits U-turns in a "business district" or at an intersection controlled by traffic signals. "Business district" in section 16-3-133 is not defined. However, an undefined term does not make a statute vague. *See State v. Holcombe*, 187 S.W.3d 496, 500 (Tex. Crim. App. 2006). Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meanings so well-known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *See Watson v. State*, 369 S.W.3d 865 (Tex. Crim. App. 2012). *See also Meuret v. State*, 500 S.W.3d 539, 553 (Tex. Crim. App. 2016).

The intersection where Appellant made a U-turn has businesses on two of the four corners and the other two corners are commercial lots. In utilizing Amarillo's zoning map, the State pointed out that the intersection where Appellant was stopped was zoned as a "light commercial" district. "Commercial" is defined as "occupied with or engaged in commerce or work intended for commerce"; "of or relating to commerce." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 249 (11th ed. 2003). "Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood"; "a commercial or sometimes an industrial enterprise." *Id.* at 167.

A statute provides fair notice of prohibited or required conduct and adequate guidelines for law enforcement if it communicates its reach in words of common understanding. *Baird v. State*, 212 S.W.3d 624, 629 (Tex. App.—Amarillo 2006, pet.

ref'd). Appellant's interpretation that "Central Business District" and "business district" are synonymous leads to an absurd result that U-turns are illegal only in the geographic area defined as the "Central Business District" in section 16-3-130. The drafters of the relevant sections of the Amarillo Municipal Code did not accidentally omit the word "central" from "business district" in section 16-3-133. The references to "Central Business District" are preceded by the article "the" whereas references to "business district" are preceded by the article "a" meaning any business district in Amarillo.

If we were to accept Appellant's argument that U-turns are only prohibited in the Central Business District as defined by section 16-3-130, it would obviate the need for sections 16-3-132 (Turning Around—Where and when permitted) and 16-3-133 (Same-Prohibited in business district, at traffic signals). Appellate courts must not interpret a statute in a manner that renders any part of the statute meaningless or superfluous. *In re State*, 489 S.W.3d 24, 31 (Tex. App.—Amarillo 2016, no pet.). Additionally, "the courts of this State have long held that persons are presumed to know the law and ignorance of the law excuses no man." *See Hayes v.* State, 672 S.W.2d 246, 248 (Tex. App.—Waco 1984, no pet.) (citing *Crain v. State*, 69 Tex. Crim. 55, 153 S.W. 155 (1913)). *See also Burns v. State*, No. 07-15-00229-CR, 2016 Tex. App. LEXIS 3405, at *10 (Tex. App.—Amarillo April 1, 2016, pet. ref'd).

We conclude that the term "Central Business District" defined in section 16-3-130 is not synonymous with the term "business district" in section 16-3-133. In applying the principles of statutory construction, we also conclude that section 16-3-133 is not vague or ambiguous and that the trial court did not err in concluding that the intersection in

question was "within a business district."  Accordingly, Appellant was lawfully stopped for making a U-turn in a "business district."  Appellant's sole issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.