

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-21-00073-CR

_____

### THOMAS GLENN BARNES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 276th District Court
Marion County, Texas
Trial Court No. F15294

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Thomas Glenn Barnes, a sex offender, was convicted after a bench trial of failing to register or report online identifier information. Barnes was sentenced to twelve years' imprisonment for the second-degree-felony offense. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(b)(3). In his sole point of error on appeal, Barnes argues that the trial court erred by rejecting his affirmative defense of mistake of law.[1]

Barnes's defense was based on the United States Supreme Court's ruling in *Packingham v. North Carolina*, which held that the First Amendment protects sex offenders from laws that "suppress lawful speech" by "foreclos[ing] access to social media altogether." *Packingham v. N. Carolina*, 137 S.Ct. 1730, 1732, 1737–38 (2017) (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002)). *Packingham* does not apply to Barnes's case because he was never prevented from using social media and was instead required only to report his social media use

---

[1] Barnes argues that the trial court erred by finding the evidence of his affirmative defense legally and factually insufficient. "When we consider the legal and factual sufficiency of the evidence in dealing with 'those few instances in criminal cases in which the burden of proof is a preponderance of the evidence,' such as affirmative defenses, we are to use the civil standards for legal and factual sufficiency." *Afzal v. State*, 559 S.W.3d 204, 207 (Tex. App.—Texarkana 2018, pet. ref'd) (quoting *Brooks v. State*, 323 S.W.3d 893, 924 (Tex. Crim. App. 2010) (plurality op.) (Cochran, J., concurring)). "If an appellant contends that there is no evidence to support an adverse finding on which he or she has the burden of proof, we construe the issue as a claim that the contrary was established as a matter of law." *Id.* (citing *Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013) (citing the civil standard of review for legal sufficiency in *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005))).

In evaluating whether there is legally insufficient evidence to support the finding, "[w]e first search the record for evidence favorable to the finding, disregarding all contrary evidence *unless a reasonable factfinder could not*." *Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013). "If there was some evidence, then the appellate court must reject the appellant's legal-sufficiency argument." *Afzal*, 559 S.W.3d at 208 (footnote omitted). "In other words, '[o]nly if the appealing party establishes that the evidence conclusively proves his affirmative defense and "that no reasonable jury was free to think otherwise,["] may the reviewing court conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense.'" *Id.* (first alteration in original) (quoting *Matlock*, 392 S.W.3d at 670).

"If we find no evidence to support the finding, we then determine whether the contrary was established as a matter of law." *Id.* at 208 (quoting *Matlock*, 392 S.W.3d at 669). In evaluating factual sufficiency, we consider the entire body of evidence in a neutral light to determine whether the finding on the affirmative defense was so "against the great weight and preponderance" of the evidence as to be manifestly unjust. *Matlock*, 392 S.W.3d at 671.

2

but failed to do so.  *See Ex parte Odom*, 570 S.W.3d 900, 909 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).  As a result, we find that the trial court properly rejected Barnes's mistake-of-law defense.  We affirm the trial court's judgment.

> If a registered sex offender
>
> changes any online identifier included on the person's registration form or establishes any new online identifier not already included on the person's registration form, the person, not later than the later of the seventh day after the change or establishment or the first date the applicable authority by policy allows the person to report, shall report the change or establishment to the person's primary registration authority in the manner prescribed by the authority.

TEX. CODE CRIM. PROC. ANN. art. 62.0551(a).  The State alleged that Barnes failed to register or report online identifier information.

At trial, it was shown that Barnes had been convicted of two counts of sexual assault and had twice before been jailed for failure to comply with sex-offender registration requirements.  Cynthia Simmons, a sergeant with the Jefferson Police Department, testified that Barnes was considered a high risk and was required to register every ninety days.  In writing, Barnes acknowledged the following sex-offender registration requirement by signing his initials:  "I shall report any changes to online identifiers, including establishing any new online identifier not already included on my registration form, to my primary registration authority in the manner prescribed by the authority no later than the 7th day after the change."  Simmons testified that Barnes had read and acknowledged this term explaining his duty to register and report online identifiers on January 14, 2020, but that Barnes reported no online identifiers.

Thereafter, a Brookshire's grocery employee testified that she was approached in May 2020 by Barnes while working and was invited to and did follow him on TikTok.  She later

3

became uncomfortable with Barnes's contact, and a criminal trespass warning was issued against him in June. Simmons testified that, even though Barnes had a social media account, he failed to report it when registering in July 2020. When Simmons moved Barnes to the interview room, Barnes admitted that he had a TikTok account and was arrested. Simmons testified that her investigation revealed that Barnes posted the first of 293 TikTok videos on May 2, 2020, and that he had violated his sex-offender registration requirements by failing to register or report the account within seven days.

Barnes, who testified in his defense, said he had no social media account until 2020, when he was introduced to TikTok. Barnes claimed that he believed he had a right to be on social media because "they came out with a law." He continued, "Some Supreme Court said something against it. It's against our first amendment rights, and that's something that we don't have to register. I've never been on anything else because I figured I had to register." Barnes said he received his information about the United States Supreme Court opinion from his employer, Eric Roberts, who had since passed away. Barnes also claimed that he made an appointment to register as soon as he discovered that Roberts was wrong and that he still had a duty to register any online identifiers.

The trial court rejected Barnes's mistake-of-law argument and found him guilty of the offense. Section 8.03(b) of the Texas Penal Code sets forth the mistake-of-law affirmative defense, as follows:

> (b) It is an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

4

> (1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or
>
> (2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

TEX. PENAL CODE ANN. § 8.03(b). The defendant "must prove the affirmative defense by a preponderance of evidence." TEX. PENAL CODE ANN. § 2.04(d).

The conduct charged in this case was failing to comply with sex-offender registration requirements by timely registering or reporting online identifiers. At trial, Barnes said that he had relied on Roberts's statements about a United States Supreme Court opinion for the proposition that he could have a social media account without registering or reporting it. "Section 8.03 requires reliance on a narrow class of official statements or interpretations of the law" and, because Roberts's statements are neither official statements nor qualifying interpretations of the law, they cannot establish an affirmative defense of mistake of law. *See Tafel v. State*, 524 S.W.3d 687, 692 (Tex. App.—Waco 2016, pet. ref'd) (citing TEX. PENAL CODE ANN. § 8.03(b)).

To the extent Barnes argues on appeal that his mistake-of-law argument was based on the 2017 *Packingham* decision, Barnes did not mention *Packingham* by name at trial and never said that he had read that opinion. Moreover, the case does not apply. *Packingham* addressed a North Carolina law that barred sex offenders from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." *Packingham*, 137 S.Ct. at 1733. The United

5

States Supreme Court found that the "broad wording of the North Carolina statute . . . [could] well bar access not only to commonplace social media websites, but also to websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com." *Id.* at 1736. Because the North Carolina law "with one broad stroke bar[red] access to . . . principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge," the statute, which "foreclose[d] access to social media altogether," prevented "the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at 1737. Although the United States Supreme Court found the overbroad North Carolina law unconstitutional, it did not find sex-offender registration requirements unconstitutional. *Id.* ("this opinion should not be interpreted as barring a State from enacting more specific laws than the one at issue"). Indeed, Texas registration requirements have been upheld as constitutional in the wake of *Packingham*. *See Ex parte Odom*, 570 S.W.3d at 909–16.

"Unlike the statute at issue in *Packingham*, Texas's statute does not prohibit sex offenders from accessing any sites; it only requires reporting of their online identifiers." *Id.* at 909. As a result, *Packingham* does not apply to Barnes's case, and Barnes does not argue that it should. Instead, Barnes argues that he reported his social media use "[o]nce he found out he had misinterpreted *Packingham*." Thus, it appears that Barnes's mistake-of-law defense was based on his own mistake, but "[i]gnorance of [the] law excuses no one." *Crain v. State*, 153 S.W. 155, 155 (Tex. 1913); *see* TEX. PENAL CODE ANN. § 8.03(a) ("It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect."). Simply put,

6

Barnes's reliance on his own mistaken belief that *Packingham* excused him from registering or reporting online identifiers was unreasonable as a matter of law. *See Tafel*, 524 S.W.3d at 692.

The *Packingham* decision did not excuse Barnes's duty to register or report online identifiers. From the evidence presented, the trial court could have concluded (1) that Barnes knew of the registration requirements, (2) that his failure to report online identifiers constituted a crime, and (3) that Barnes's reliance, either on his own interpretation of *Packingham* or on any statement made by Roberts, did not qualify under the statute and, therefore, did not support a mistake-of-law defense. As a result, we overrule Barnes's legal and factual sufficiency complaints and find that the trial court properly rejected his mistake-of-law affirmative defense.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted: January 25, 2022
Date Decided: March 2, 2022

Do Not Publish